**SO ORDERED.**

**SIGNED this 06 day of March, 2006.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| MICHAEL JAMES SCHMITZ, ) | Case No. 04-16019 |
| ) | Chapter 13 |
| Debtor. ) | |
| ) | |

**MEMORANDUM OPINION**

The debtor objects to the allowance of attorney fees to Central Bank & Trust ("CB&T") as part of its claim. Debtor concedes that CB&T is an oversecured creditor and is entitled to some attorney fees under 11 U.S.C. § 506(b) but challenges their reasonableness and the hourly rate charged for legal assistant time. CB&T incurred both pre-petition attorney fees in a state court foreclosure action and post-petition attorney fees in this bankruptcy case totaling $9,212 of which some $4,500 is attributable to the rate and time of the legal assistant in question.

Factual Background

Debtor filed his chapter 13 petition on October 30, 2004. On November 11, 2004 CB&T

1

filed its proof of claim in the amount of $55,973.55.[1]  Debtor is indebted to CB&T on two loans that are secured by two real estate mortgages covering several parcels of real estate and two vehicles. The parties are in apparent agreement that CB&T is oversecured and entitled to enhancement of its claim under 11 U.S.C. § 506(b).  CB&T 's proof of claim reflects that $5,707 is attributable to pre-petition attorney fees incurred by CB&T in the course of its state court foreclosure against debtor.

CB&T filed its state court foreclosure action against debtor on June 9, 2004.  CB&T also joined as party defendants in the foreclosure case debtor's ex-wife Tamara Schmitz, whose whereabouts were unknown, and the Internal Revenue Service which held federal tax liens.  The parties were in the process of drafting and circulating an agreed journal entry of judgment in the foreclosure case when debtor filed his bankruptcy case.

Debtor filed his chapter 13 plan of reorganization and in it, objected to the allowance of attorney fees to CB&T, claiming that the amount set forth in CB&T's proof of claim was excessive.[2] The matter was set to an evidentiary hearing on October 18, 2005.  Debtor challenges only the time spent and hourly rate of Doug Bebout, a legal assistant with Stinson Morrison Hecker LLP which represents CB&T.

At the evidentiary hearing, the Court received by stipulation Debtor's Exhibits A-D consisting of the nine page foreclosure petition filed by CB&T, a draft journal entry of judgment in the foreclosure case, and two fee applications and supporting time records submitted by debtor's

---

[1] *See* Proof of Claim No. 1.

[2] *See* Dkt. 8.  Debtor subsequently amended his plan but the attorney fees issue remained.  *See* Dkt. 15, 71 and 81.

2

counsel in unrelated bankruptcy cases pending before this Court showing that debtor's counsel charges $40 and $50 per hour for legal assistant time.

Debtor also called William H. Zimmerman, a bankruptcy and commercial law attorney with approximately 25 years' experience, to testify that the highest current hourly rate paid legal assistants in Wichita was $65 at the date of trial. Mr. Zimmerman described the types of tasks he assigns to his legal assistant in foreclosure and bankruptcy cases. Mr. Zimmerman opined that eleven hours of time spent drafting a petition for a foreclosure action of medium difficulty and complexity was probably excessive. Mr. Zimmerman did not, however, review Stinson Morrison Hecker's billing statements in this case. The Court accords credibility to Mr. Zimmerman's testimony.

CB&T offered into evidence Exhibits 1-10 consisting of its proof of claim, its loans and collateral documentation, the billing statements of Stinson Morrison Hecker and a recapitulation of those statements. CB&T did not call any witnesses. Nor did CB&T call Doug Bebout to testify concerning his education, training, qualifications, or experience or the tasks he performed in this case or the foreclosure case.

Following the evidentiary hearing, the Court took the matter under advisement and independently reviewed Stinson Morrison Hecker's billing statements and time entries. CB&T seeks total attorney fees of $9,212 – approximately $5,707 of those fees were incurred prepetition and $3,505 were incurred post-petition.[3] The Court's review of the billing statements show that a total of 45.30 hours were charged and billed by Mr. Bebout, of which 34.70 hours were spent prepetition on the foreclosure matter and 11.60 hours were spent post-petition on the bankruptcy

---

[3] CB&T Exhibit 10.

3

case. The total fees charged for Mr. Bebout's time was $4,580.66 with $3,390.52 attributable to his work in the foreclosure case and $1,190.14 attributable to his work in the bankruptcy case. The hourly rate charged for Mr. Bebout's time ranged from a low of $90.69 and a high of $105. The Court is unable to determine whether the type of task performed determined the hourly rate charged or whether the higher hourly rate was simply a fee increase implemented by the Stinson Morrison Hecker law firm. Because the debtor's objection to Mr. Bebout's fees focused primarily on the time he spent on the foreclosure case, the Court has carefully reviewed those time entries. By the Court's calculation, the bulk of Mr. Bebout's time was attributable to two primary tasks in the foreclosure case. Mr. Bebout devoted 9.60 hours preparing the foreclosure petition and another 8.6 hours drafting and circulating the agreed journal entry. As is typical in a foreclosure case that is not hotly contested, the agreed journal entry parallels to a large degree the allegations of the foreclosure petition.

In the bankruptcy case, Mr. Bebout primarily spent his time preparing CB&T's proof of claim and drafting an objection to the debtor's chapter 13 plan. Mr. Bebout also monitored the bankruptcy case and periodically reported to CB&T's attorneys concerning the status of the bankruptcy case.

Analysis

This Court has jurisdiction to determine the amount of attorney fees that should be allowed under 11 U.S.C. § 506(b) as part of an oversecured creditor's proof of claim.[4]

---

[4] *In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1055-56 (5th Cir. 1986) (Federal law applied to determine a reasonable attorney's fee under § 506(b).); *In re Center*, 282 B.R. 561 (Bankr. D.N.H. 2002) (Bankruptcy court had jurisdiction of chapter 13 debtor's objection to oversecured mortgage creditor's proof of claim.)

4

CB&T's properly filed proof of claim is prima facie evidence of its validity.[5] Absent objection, a properly filed claim is deemed allowed. As the party objecting to a creditor's claim, debtor has the burden to meet the presumed validity of the claim.[6] If the presumption is met, then the burden of proof shifts to the creditor to demonstrate by a preponderance of the evidence that its claim is valid. CB&T has the ultimate burden of persuasion as to the validity and amount of its claim.[7]

These burden shifting rules apply even in a situation such as this where attorney's fees are part of an oversecured creditor's proof of claim.[8] To recover attorney fees under § 506(b), the creditor must establish that (1) it is oversecured in excess of the fees requested; (2) the agreement giving rise to the claim provides for recovery of attorney fees; and (3) the fees are reasonable.[9] Here, the only matter in dispute is the reasonableness of the fees sought. The debtor does not dispute that CB&T is oversecured or that the loan documentation permits CB&T to recover its attorney fees.

The debtor has met the presumption of validity of CB&T's claim for attorney fees by placing

---

[5] Fed. R. Bankr. P. 3001(f).

[6] *In re Geneva Steel* Co., 260 B.R. 517, 524 (10th Cir. BAP 2001), *aff'd* 281 F.3d 1173 (10th Cir. 2002).

[7] *Id.*; *In re Harrison*, 987 F.2d 677, 680 (10th Cir. 1993).

[8] *See In re CVC, Inc.*, 120 B.R. 877 (Bankr. N.D. Ohio 1990) (Oversecured creditor had burden of proof to establish the reasonableness and allowance of attorney's fees under § 506(b).); *In re Atwood*, 293 B.R. 227 (9th Cir. BAP 2003) (Secured creditor has burden of proving reasonableness of its attorney fee claim as oversecured creditor under § 506(b).); *In re White*, 260 B.R. 870 (8th Cir. BAP 2001) (Oversecured creditor must establish that its attorney fees under § 506(b) are reasonable.).

[9] *In re Biazo,* 314 B.R. 451, 460 (Bankr. D. Kan. 2004); *In re White*, 260 B.R. at 880.

5

in question the propriety of the hourly rate charged for the legal assistant as well as the amount of time expended on the work charged. Debtor has provided evidence that a reasonable hourly rate for legal assistants is in the range of $40 to $65. Debtor has provided through Mr. Zimmerman's testimony sufficient evidence that the time spent in preparing the foreclosure petition is excessive. Thus, the burden of proof on the claim shifts to CB&T.

Even if debtor did not meet the presumption here, the Court is still required to make an independent review of requests for professional fees and expenses before allowing them.[10] For § 506(b) claims, a reasonable attorney fee is first determined using the lodestar method and applying the so-called *Johnson*[11] factors.[12]

As noted in *In re Lederman Enterprises*, it is often difficult to apply the *Johnson* factors in the bankruptcy setting.

> The application of the standards set forth in the *Johnson* case become more difficult when applied to a bankruptcy proceeding where there are a wide variety of issues

---

[10] The purpose of the reasonableness requirement "is to insure that an oversecured creditor is not given a blank check to incur attorneys' fees which will be reimbursed out of its collateral. 'If proper restraint is not exercised, the costs of any 'overlawyering' should be borne by the Creditor, rather than debtors.' [citing] *In re Staggie,* 255 B.R. 48, 54 (Bankr. D. Idaho 2000)." *In re Center*, 282 B.R. 561, 567 (Bankr. D. N.H. 2002).

[11] The enumerated factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client to the circumstances; (8) The amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) The "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

[12] *In re Center*, 282 B.R. at 567; *In re Smith*, 230 B.R. 437, 439 (Bankr. N.D. Fla. 1999); *In re Lederman Enterprises, Inc.*, 106 B.R. 674 (Bankr. D. Colo. 1989); *In re Permian Anchor Services, Inc.*, 649 F.2d 762 (10th Cir. 1981); *In re American Metals Corp.*, 31 B.R. 229, 235 (Bankr. D. Kan. 1983).

arising. While the various factors enumerated in the *Johnson* case are certainly appropriate, the United States Supreme Court has recently affirmed its view that in awarding fees and in considering the *Johnson* standards, the Court should, in the first instance, be concerned with multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation. *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). It is that standard which, therefore, must be addressed in determining the reasonableness of the request filed for the fees of the attorneys . . . .[13]

The Court agrees with the bankruptcy court's assessment in *Lederman* and notes an absent record here relating to most of the *Johnson* factors.[14] Accordingly, this Court will focus largely on the lodestar methodology.

**Time Spent.**

As noted previously, Mr. Bebout charged a total of 45.30 hours, with 34.70 hours being billed for his work on the prepetition foreclosure matter and 11.60 hours billed postpetition in this bankruptcy case.

The foreclosure case was not a "plain vanilla" proceeding, nor was it highly complex. The case involved multiple properties, but only three other parties including a senior lienholder, the IRS, and the Kansas Department of Revenue. The senior lender filed a cross-claim which was to be disposed of in the final journal entry and decree of foreclosure. This court would rate the matter's complexity at about a "six" on a scale of one to ten (ten being very complex).

Stinson Morrison Hecker made a tactical decision to reduce its client's expense by utilizing

---

[13] *In re Lederman Enterprises, Inc.*, 106 B.R. at 679.

[14] The Court heard no evidence of the fourth [the preclusion of other employment by the attorney due to acceptance of the case], seventh [time limitations imposed by the client to the circumstances] ninth [the experience, reputation and ability of the legal assistant], tenth [the "undesirability" of the case] or eleventh [the nature and length of the professional relationship with the client] factors.

7

paralegal services to prepare documents and attend to other matters incident to the foreclosure. CB&T could not effectively realize the benefit of its bargain without proceeding in foreclosure, filing its proof of claim and participating in the plan confirmation process. The services were clearly necessary.[15]

In some instances, the Court questions the time expended by Mr. Bebout and the sequencing of his work. By the Court's calculation, Mr. Bebout devoted 9.60 hours preparing the foreclosure petition and case for filing and another 8.6 hours drafting and circulating the agreed journal entry, approximately 40 percent of Mr. Bebout's total time sought here. Stinson Morrison Hecker billed some $1,156 for his work in connection with the preparation of the foreclosure petition. As an example, on March 26, 2004, April 6, 2004 and April 19, 2004, he spent a total of 2.2 hours drafting the foreclosure petition, but then spent more time revising it *after* receiving the title commitment for one of the properties. Based on this Court's considerable practice experience foreclosing mortgages, reviewing the title binder would seem to be the among the first tasks to be completed before drafting a petition. In general, the time expended here seems greater than one would expect an attorney to spend doing comparable work. The Court understands that the petition often forms the backbone of the foreclosure decree which, after all, is the most critical document in the case because of its effect on title, but here Mr. Bebout spent an additional 8.6 hours drafting and revising the journal entry of foreclosure. This does not include the time billed by attorneys reviewing and revising Mr. Bebout's draft pleadings. Rather than actually edit these time records (which were well-maintained), the Court believes an appropriate adjustment can be made by reducing Mr. Bebout's hourly rate.

Having thoroughly examined the fee statements in connection with Mr. Bebout's post-

---

[15] *See* 11 U.S.C. § 330(a)(3)(C).

petition time in this bankruptcy case, the Court has no quarrel with either the necessity or reasonableness of those efforts or the time spent on them.

**Hourly Rate Charged.**

Mr. Bebout's hourly rate varied from a low of about $90 to a high of $105. He billed most of his time at $100 per hour for the foreclosure matter. He billed nearly all of his time in the bankruptcy case at $105 or $100 per hour. As noted above, the creditor adduced no evidence of any special qualifications or training that would distinguish Mr. Bebout from other capable legal assistants working in this locality. The Court does recognize that this work, were it not done by a legal assistant, would be done by a lawyer billing at a substantially higher rate. The Stinson Morrison Hecker attorneys handling this matter for CB&T bill at hourly rates of $245 and $160. Presumably, a lawyer doing this work would complete it in a shorter period of time, lessening the impact of the higher rate. In any event, if the local fee "market" is an indicator, based on the evidence in this case, the Court concludes that the entire range of Mr. Bebout's hourly rates ($90-$105) is higher than other legal assistants are billed in the Wichita area.[16] Based on the uncontroverted testimony of Mr. Zimmerman and a review of the fee applications of the Redmond and Nazar firm, the Court concludes that the average legal assistant's allowable hourly rate should rarely exceed $70. This matter certainly is not such an instance.

This is not to say that a legal assistant who was, for instance, a non-licensed law school graduate, an experienced title examiner, or possessed of specialized education and training might not command a higher rate. That evidence is simply not in this record. Nor is this to say that the

---

[16] The Court also notes that other then the testimony of Mr. Zimmerman and Redmond & Nazar's billings, the Court was without evidence concerning the customary rate for legal assistants in the community in non-bankruptcy matters and whether that rate varied from bankruptcy matters. *See* 11 U.S.C. § 330(a)(3)(E).

9

Court does not recognize that there are "tiers" in the legal market and that regional or national firms like Stinson Morrison Hecker will generally have higher fee structures than local firms like debtor's counsel, Redmond and Nazar.

And the Court does not ignore the fact that CB&T should be free to employ the counsel of its choice. Nevertheless, when the estate is footing the bill, the Court must balance CB&T's right to choose counsel with the best interests of the creditors. This balancing compels the Court to move toward the lower rate. Accordingly, the Court concludes that Mr. Bebout's hourly rate should be reduced to $70 for all time billed in connection with the foreclosure and bankruptcy case.

Conclusion

CB&T's proof of claim number 1 shall be allowed as filed, except that its request for attorney's fees under § 506(b) shall be reduced from $9,212 to $7,802.34, allowing for Mr. Bebout's hourly rate to be charged at $70 for his 45.3 hours, rather than the range of rates $90 - $105 actually billed.[17]

# # #

---

[17] As currently billed, the fees attributable to Mr. Bebout's 45.3 hours are $4,580.66. Those fees are reduced by $1,409.66 [$4,580.66 - $3,171] when his time is charged at $70 per hour (45.3 hours x $70/hour = $3,171).